IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CORDELL BENTON,

                         Plaintiff,

v.                                      Case No. 24-2357-DDC

HONEYWELL INTERNATIONAL INC.,

                         Defendant.

## MEMORANDUM AND ORDER

Plaintiff Cordell Benton sued his former employer, defendant Honeywell International Inc. Plaintiff asserts that defendant passed him over for a promotion he deserved, stripped him of key job responsibilities, assigned him unfair job evaluations, and constructively discharged him from employment. He brings claims for race discrimination and unlawful retaliation. Defendant has filed a Motion for Summary Judgment (Doc. 46). The court grants in part and denies in part defendant's motion, as detailed below.

## I.      Background

The following facts either are uncontroverted or, if controverted, are construed in a light most favorable to plaintiff. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Plaintiff, who is African American, worked for defendant from May 21, 2021, through April 7, 2023. Doc. 45 at 2 (PTO ¶ 2.a.1.). Defendant originally hired plaintiff as a Senior Integrated Supply Chain Operations Manager. *Id.* (PTO ¶ 2.a.3.).

*Evaluations and Failure to Promote*

In 2021, plaintiff's direct supervisor, Steven Klossen, gave plaintiff a rating of four on his evaluation. *Id.* at 3 (PTO ¶ 2.a.12.). A rating of four represents that results are at standard and behaviors are above standard. Doc. 47-3 at 17 (Klossen Dep. 56:2–6). In the same evaluation, Klossen rated plaintiff above standard in several categories and below standard in a couple categories. Doc. 45 at 3 (PTO ¶¶ 2.a.13., 14.).

In the 2022 evaluation, defendant assigned plaintiff a rating of five, placing his results and behaviors at standard level. *Id.* at 5 (PTO ¶ 2.a.23.). For this evaluation, plaintiff received mixed ratings across a range of categories, variously scoring at-standard, below-standard, and above-standard. *Id.* (PTO ¶¶ 2.a.24., 25.). The evaluation's commentary noted areas for plaintiff's improvement, including a need to learn the details of the Olathe business and expand his network. *Id.* (PTO ¶ 2.a.26.). But the evaluation also noted that plaintiff faced staffing shortages that might have contributed to his struggles; explained that he achieved "excellent results" in some respects; and praised his leadership and passion. *Id.* at 5–6 (PTO ¶¶ 2.a.25.–27.).

*Interim Site Leader and Failure to Promote*

In August 2022, defendant promoted Klossen to a vice president position and appointed plaintiff to serve as the interim site leader until it could identify Klossen's permanent replacement. *Id.* at 6–7 (PTO ¶¶ 2.a.30., 31.). Plaintiff applied for the open site leader position. *Id.* (PTO ¶ 2.a.33.). Klossen interviewed plaintiff for the position. *Id.* (PTO ¶ 2.a.34.). An HR employee also interviewed plaintiff. *Id.* (PTO ¶ 2.a.35.). On September 30, 2022, Klossen told plaintiff that he was continuing to look at other candidates for the site leader position. *Id.* (PTO ¶ 2.a.36.). Defendant ended up hiring Todd Press, who is Caucasian, for the site leader position. *Id.* (PTO ¶¶ 2.a.37., 38.). Klossen recommended Press over plaintiff because Press had occupied

2

a higher managing position than plaintiff and "had more experience managing a larger team" than plaintiff. Doc. 47-3 at 4–5 (Klossen Dep. 16:20–17:5).[1] Klossen also mentioned plaintiff's "ability to project revenue[,]" that plaintiff "struggled to answer" questions, and that plaintiff "was struggling to fulfill the demands of [the interim-site-leader] role" as reasons he chose Press over plaintiff. Doc. 50-23 at 46 (Pl. Ex. 23).

### *Press's Management*

Plaintiff complains about several aspects of Press's management. Press doled out assignments to plaintiff's direct reports in meetings where plaintiff was absent. *See* Doc. 50-6 at 3 (Gonzalez Decl. ¶ 4); Doc. 50-5 at 3 (Dennis Decl. ¶ 8).[2] When asked, Klossen agreed that this sort of meeting "could be perceived . . . as undermining" plaintiff's management. Doc. 50-3 at 8–9 (Klossen Dep. 128:21–129:2). Press also reprimanded plaintiff in an email chain that included several other employees for giving a "disappointing" response. Doc. 45 at 8 (PTO ¶ 2.a.48.). Against this backdrop of Press undermining plaintiff, one of plaintiff's direct reports,

---

[1]     Plaintiff purports to controvert this fact with this statement: "33. Controverted. Plaintiff objects to the facts set forth in paragraph 33. (*See*, P. 18, *supra* and PSOF)." Doc. 52-1 at 6. This response violates D. Kan. Rule 56.1(b)(1), which requires parties to "refer with particularity to the those portions of the record upon which the opposing party relies[.]" Plaintiff's citation to a page in his brief and to his entire statement of facts is insufficient. As our Circuit has explained, "it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (quotation cleaned up); *see also Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) (explaining that district courts aren't "obligated to comb the record to make [a party's] arguments for him"). Because plaintiff failed to comply with our local rules and binding precedent, the court considers this fact uncontroverted. The court also notes that the court, although not obliged to do so, reviewed plaintiff's entire statement of facts and brief and failed to locate any factual support controverting Klossen's explanation why he recommended Press over plaintiff.

[2]     The court overrules defendant's perfunctory lack-of-foundation objection to this fact. *See* Doc. 69 at 9. Apart from the conclusory nature of defendant's objection, both Gonzalez and Dennis attested that they were present at meetings where Press gave them assignments while plaintiff was absent. *See* Doc. 50-6 at 3 (Gonzalez Decl. ¶ 4); Doc. 50-5 at 3 (Dennis Decl. ¶ 8). Both witnesses clearly have personal knowledge of meetings they attended. And viewed in the light most favorable to plaintiff, as the non-moving party, these statements support a reasonable inference that Press gave out assignments behind plaintiff's back.

Gonzalez, attested that she was confused about who her manager was.  Doc. 50-6 at 3 (Gonzalez Decl. ¶ 4).  Gonzalez further stated that Press "would constantly bypass" plaintiff.  *Id.*

### *Internal Complaint and Investigation*

On December 27, 2022, plaintiff filed an internal complaint with Honeywell.  Doc. 45 at 7 (PTO ¶ 2.a.39.).  This internal complaint alleged race discrimination, harassment, and differential treatment largely based on Press's management.  Doc. 50-12 at 2 (Pl. Ex. 12).  Defendant investigated the reports and recommended no action against Press.  Doc. 45 at 7–8 (PTO ¶¶ 2.a.40.–45.).

### *"Special Project" Assignment*

In March 2023, Press emailed a group of employees, announcing that he had asked plaintiff "to take on a special assignment[.]"  *Id.* at 9 (PTO ¶ 2.a.52.).  The parties dispute the purpose and effect of this assignment.  Plaintiff, for his part, characterizes the special-project assignment as a demotion.  Doc. 50-1 at 41 (Pl. Dep. 157:20–158:10).  Indeed, it's uncontroverted that this "special assignment" consisted of just a small subset of plaintiff's existing duties and removed plaintiff's key job responsibilities.  *Id.* (describing special assignment as removing plaintiff's "key responsibilities"); Doc. 50-6 at 3–4 (Gonzalez Decl. ¶ 6) (characterizing plaintiff's new assignment as "a small part" of his "existing duties"); Doc. 50-3 at 10 (Klossen Dep. 135:2–136:15) (explaining that all special-project duties were within the purview of plaintiff's job as OEM manager).  The email announcing the special assignment reassigned many of plaintiff's duties to other employees.  Doc. 50-18 at 4–5 (Pl. Ex. 18).  On the other hand, defendant spins this special-assignment project as a career opportunity for plaintiff.  For instance, Press testified that he intended for the special assignment to give plaintiff "the opportunity to prove his abilities and then to move up in the organization."  Doc. 47-5 at 10–11 (Press Dep. 67:23–68:5).  Press also testified that he put plaintiff "on the special assignment so

4

that he could get visibility to the CEO, to the senior vice president in the organization, as well as our top customers[.]"  *Id.*

### HR Debacle and Coaching

Plaintiff also complains about Press and HR reprimanding him.  Plaintiff lacked authority to hire and fire employees without involving HR.  *See* Doc. 50-1 at 53 (Pl. Dep. 206:14–25).  He testified that he always involved HR in his hiring and firing decisions.  *Id.*[3]  Still, Press told plaintiff to ensure that he included an HR employee in hiring and firing decisions.  Doc. 47-12 at 2 (Def. Ex. K).  He also directed plaintiff to stop:  (1) directing supervisors to perform HR functions; (2) "[r]equesting salaried headcount above census"; and (3) "[a]dding additional headcount above capacity model in any area[.]"  *Id.*  The parties dispute whether this warning constituted a formal warning.  But, the parties agree, this discussion didn't affect plaintiff's pay or title.  Doc. 47-2 at 42 (Pl. Dep. 212:1–4).

Plaintiff resigned on April 7, 2023, citing Press's ongoing racial discrimination and defendant's failure to investigate his complaint adequately.  Doc. 47-14 at 1–2 (Def. Ex. M).

Plaintiff asserts two categories of claims—discrimination and retaliation.  Doc. 45 at 17 (PTO ¶ 4.a.).  He asserts both his claims under Title VII of the Civil Rights Act and under 42 U.S.C. § 1981.  *Id.*

## II.     Legal Standard

Summary judgment is appropriate where the moving party demonstrates there is "no genuine dispute" about "any material fact" and that the movant is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This standard dictates that the court "view the evidence

---

[3]     Defendant tried to controvert this fact, asserting that plaintiff attempted to fire an employee without following through on a performance improvement plan or sufficiently involving HR.  Doc. 69 at 9.  But plaintiff did involve HR when he wanted to fire the employee.  *See* Doc. 50-8 at 2.

and make inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). Even if the non-moving party fails to respond adequately, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*,

6

477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144 F.3d at 671).  Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation cleaned up).

Federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327.  Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Id.* (quoting Fed. R. Civ. P. 1).

## III.      Analysis

This Order takes up the summary-judgment analysis in this sequence:  *First*, the court addresses plaintiff's discrimination claims.  *Second*, the court takes on plaintiff's hostile-work-environment claim, which the parties have briefed separately from plaintiff's discrete-act discrimination claims.  *Third*, the court tackles plaintiff's retaliation claims.

### A.      Title VII and § 1981 Discrimination

"Title VII makes it unlawful 'to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'"  *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting 42 U.S.C. § 2000e-2(a)(1)).  Section 1981 also prohibits an employer from discriminating against an employee on the basis of race.  *See* 42 U.S.C. § 1981(a), (b).  The "standards and burdens under § 1981 are the same as those under Title VII[.]" *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 (10th Cir. 1997).

7

A plaintiff may use direct evidence or indirect evidence, or both, to support Title VII and

§ 1981 claims. *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). At the summary-

judgment stage, the court analyzes indirectly supported claims under the burden-shifting

framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Khalik*, 671 F.3d at

1192. Under *McDonnell Douglas*, a plaintiff, *first*, must establish a prima facie case. *Bekkem*,

915 F.3d 1267. The "burden on the employee to establish a prima facie case is light[.]" *Guy*

*v. McDonough*, No. 20-6158, 2021 WL 3854764, at *2 (10th Cir. Aug. 30, 2021). *Second*, if

plaintiff satisfies the obligations for a prima facie case, then the burden shifts to defendant, who

must produce "'a legitimate nondiscriminatory reason for its employment decision.'" *Bekkem*,

915 F.3d at 1267 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). As is

the employee's burden at the first step, the employer's burden at this second stage is

"exceedingly light." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007) (internal

quotation marks omitted). *Last*, if defendant succeeds at the second step, the burden shifts back

to the plaintiff, who must "show that there is a genuine dispute of material fact" whether "the

employer's proffered reason for the challenged action is pretextual—*i.e.*, unworthy of belief."

*Bekkem*, 915 F.3d at 1267 (quotation cleaned up).[4]

As will become clear below, these three steps overlap. So, when addressing step one, the

court mixes in step two by providing defendant's reasons for taking certain employment actions

against plaintiff. It makes for a more coherent narrative. And, following plaintiff's lead in his

---

[4]    Section 1981 commands a more stringent causation element than Title VII. *See Comcast Corp. v.
Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 336–341 (2020) (explaining Title VII's "'motivating
factor' causation test" differs from § 1981's "but-for causation" test). Nonetheless, the *McDonnell
Douglass* framework continues to govern summary-judgment issues for § 1981 claims. *See Mann v. XPO
Logistics Freight, Inc.*, 819 F. App'x 585, 594 n.15 (10th Cir. 2020).

briefing, the court mixes step one and step three by evaluating the same evidence to determine whether plaintiff has met his summary-judgment burden at step one and step three.

For discrimination claims, "a prima facie case requires evidence that:  (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215 (10th Cir. 2022) (quotation cleaned up). No one disputes that plaintiff, who is African American, belongs to a protected class.  The court thus takes up the adverse-employment-action prong, first.

### 1.    Adverse Employment Actions

The Supreme Court recently abrogated Circuit precedent requiring a Title VII litigant to "meet a heightened threshold of harm—be it dubbed significant, serious, or something similar." *Muldrow v. City of St. Louis*, 601 U.S. 346, 353 (2024).  Instead, to "make out a Title VII discrimination claim, a [plaintiff] must show some harm respecting an identifiable term or condition of employment." *Id.* at 354–55.  "This means an employer's action 'must have left the plaintiff worse off, but *need not have left her significantly so*.'" *Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc.*, 144 F.4th 1212, 1216 (10th Cir. 2025) (quotation cleaned up) (emphasis in original) (quoting *Muldrow*, 601 U.S. at 359).[5]

Plaintiff cites four purportedly adverse employment actions.  As plaintiff tells it, defendant:  (1) assigned him to a special project; (2) failed to promote him; (3) constructively discharged him; and (4) issued him poor performance evaluations and a warning.  Doc. 52-1 at

---

[5]    As the court already has discussed, our Circuit has applied the same substantive standards to § 1981 claims as Title VII claims. *Aramburu*, 112 F.3d at 1410.  And like the text of Title VII, "the text of § 1981 is devoid of any indication that adverse actions must be material." *Hayes v. G&E Real Estate Mgmt. Servs.*, No. 24-cv-01459 (ER), 2025 WL 769162, at \*6 (S.D.N.Y. Mar. 11, 2025).  The court thus reasons that *Muldrow*'s revision of the Title VII adverse-employment-action standard applies equally to § 1981 claims. *See id.* (concluding that *Muldrow*'s standard applies equally to § 1981 claims).

19–28.  Just the first two of these actions—the special-project assignment and failure to promote—qualify as adverse employment actions under governing law.  The court explains, below.

### a.      Special Project

The court starts with the special-project assignment.  Recall that defendant, with this assignment, effectively stripped plaintiff of his key job responsibilities and left him only with a small subset of his duties.  But plaintiff's title and pay remained constant.  Whether this reassignment imposed "some harm respecting an identifiable term or condition of employment" is a close call.  *Muldrow*, 601 U.S. at 355.  And close calls aren't summary-judgment fodder.  While defendant characterized this assignment as an opportunity for plaintiff, a rational jury could find that stripping plaintiff of key responsibilities harmed the terms and conditions of plaintiff's employment.

Other courts agree.  Applying *Muldrow*, the Fourth Circuit considered whether "a loss of supervisory authority" constitutes "an actionable 'disadvantageous change' in employment status."  *Herkert v. Bisignano*, 151 F.4th 157, 165 (4th Cir. 2025).  The Fourth Circuit declined to hold that a loss of supervisory authority *always* constitutes an adverse employment action.  Instead, it characterized the question as "a context-specific inquiry" and left it for the jury to decide.  *Id.*  District courts applying *Muldrow* have reached similar results.  Loss of job responsibilities may satisfy *Muldrow*'s lenient some-harm standard.  *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024) (explaining that, under *Muldrow*, "loss of job responsibilities" qualifies as an adverse employment action); *Ruiz v. Credit Agricole Corp. & Inv. Bank*, No. 22-CV-10777 (VSB)(BCM), 2025 WL 1642406, at *7 (S.D.N.Y. June 10, 2025) (same); *Ayvazian v. Collins*, No. 24-2804 (JEB), 2025 WL 1795037, at *7 (D.D.C. June 30, 2025) ("A significant reduction in job responsibilities . . . can qualify as an

10

adverse employment action.").  Plus, even under the more stringent pre-*Muldrow* standard, our Circuit "recognized that a reassignment involving 'a de facto reduction in responsibility' and 'a lesser degree of skill' can create a jury question" whether a transfer qualified as "a demotion" and thus an adverse employment action.  *Neri v. Bd. of Educ.*, 860 F. App'x 556, 565 (quoting *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003)).

Striving to avoid this outcome, defendant cites pre-*Muldrow* case law.  But *Muldrow* put these cases on life support.  For instance, defendant cites *Hillig v. Rumsfeld*, 381 F.3d 1028 (10th Cir. 2004), for the proposition that "'an alteration of job responsibilities is not an adverse employment action[.]'"  Doc. 69 at 11 (quoting *Hillig*, 381 F.3d at 1031).  But *Hillig* relies on the very adverse-employment-action standard *Muldrow* expressly overturned.  *Compare Hillig*, 381 F.3d at 1031 (citing *Sanchez v. Denv. Pub. Schs.*, 164 F.3d 527 (10th Cir. 1998), for adverse-employment-action standard), *with Muldrow*, 601 U.S. at 353 n.1 (citing *Sanchez* as a case applying the now-overturned significant-harm standard).  More fundamentally yet, *Hillig* flies in the face of *Muldrow*, which teaches us that a Title VII plaintiff only "must show some harm respecting an identifiable term or condition of employment."  601 U.S. at 354–55.  As the Fourth Circuit recognized in *Herkert*, altering job responsibilities—at least in the right context—can put a plaintiff in a worse position.

In sum, a reasonable factfinder could conclude that stripping plaintiff of significant job duties harmed the terms and conditions of plaintiff's employment.  Post-*Muldrow*, that's enough for a claim to require a trial.

### b.    Failure to Promote

The next adverse employment action plaintiff cites is defendant's failure to promote him. Defendant argues—without citing to any authority at all—that plaintiff "cannot rely on alleged lost promotional opportunities to support his § 1981 discrimination claim."  Doc. 47 at 22.

11

Defendant is wrong. Our Circuit routinely has recognized § 1981 failure-to-promote claims are cognizable. *E.g.*, *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir. 1995) (outlining elements for § 1981 failure-to-promote claim); *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004) (same). The statutory text supports this conclusion, too. Section 1981 guarantees the same right "to make and enforce contracts" to all persons "as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). And this statute defines the term "make and enforce contracts" broadly—explaining that it includes "the making, performance, modification, and termination of contracts[.]" *Id.* § 1981(b). Failing to promote an employee based on his race prevents the employee from making a new employment contract or modifying an existing employment contract, thus violating § 1981. So, § 1981 prohibits decisions that fail to promote based on race. Failure to promote thus may constitute an adverse employment action for plaintiff's discrimination claims.[6]

The court pivots to plaintiff's constructive-discharge claim, next.

### c.    Constructive Discharge

No doubt, constructive discharge qualifies as an adverse employment action. But that isn't the decisive question here. Instead, the controlling question is whether a rational jury could find that plaintiff suffered constructive discharge. It couldn't.

Constructive discharge "'occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'" *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1318 (10th Cir. 2017)

---

[6]    Defendant never contests the idea that failure to promote may constitute an adverse employment action. Because defendant hasn't raised this argument, the court needn't resolve it definitively. But it appears that defendant's decision was a wise one, for a failure to promote—which the Circuit consistently recognized as an adverse employment action pre-*Muldrow*, *e.g.*, *Ford*, 45 F.4th at 1222; *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010)—continues to qualify as an adverse employment action, post-*Muldrow*.

(quoting *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015)).  Our Circuit has explained that the "plaintiff's burden in establishing constructive discharge is substantial." *Fischer v. Forestwood Co.*, 525 F.3d 972, 980 (10th Cir. 2008); *see also Steele v. City of Topeka*, 189 F. Supp. 3d 1152, 1160 (D. Kan. 2016) ("Constructive discharge is not proven easily.").  "To establish constructive discharge, a plaintiff must show that [he] had no other choice but to quit." *Hiatt*, 858 F.3d at 1318 (quotation cleaned up).  The plaintiff's "'subjective views of the situation are irrelevant,' and [he] must instead show 'the conditions of employment were objectively intolerable.'" *Id.* (quotation cleaned up) (quoting *Bennett*, 792 F.3d at 1269); *Brown v. Austin*, 13 F.4th 1079, 1093 (10th Cir. 2021) ("Although [plaintiff] may have found conditions extremely difficult, his subjective experience does not establish that objectively the Agency's actions left him no choice but to resign." (quotation cleaned up)).  Working conditions that are "merely 'difficult or unpleasant'" won't satisfy this standard. *Steele*, 189 F. Supp. 3d at 1161 (quoting *Potts v. Davis County*, 551 F.3d 1188, 1194 (10th Cir. 2009)).

For example, take *Sampson v. Kane Is Able, Inc.*, 812 F. App'x 746, 750 (10th Cir. 2020).  There, plaintiff's employer suspended plaintiff without pay, removed his supervisory responsibilities, and reduced his pay by one dollar per hour. *Id.* at 750.  Plaintiff didn't return to work after his suspension and maintained that his employer, based on these conditions, had constructively discharged him. *Id.* at 748.  Our Circuit wasn't persuaded.  It concluded that no reasonable jury could find those consequences "objectively intolerable." *Id.* at 750 (quotation cleaned up).  To prevail on a constructive-discharge theory—the Circuit has explained—a plaintiff must prove that he "had '*no other choice* but to quit[.]'" *Potts*, 551 F.3d at 1194

13

(emphasis in original) (quoting *Yearous v. Niobrara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997)).

Applying this law to this case's summary-judgment facts, no reasonable factfinder could conclude that plaintiff suffered constructive discharge. Defendant's treatment of plaintiff—perhaps unpleasant—wasn't objectively intolerable.

Trying to meet his summary-judgment burden, plaintiff invokes *Acrey v. American Sheep Industry Association*, 981 F.2d 1569, 1574 (10th Cir. 1992). There, our Circuit affirmed a jury's finding of constructive discharge. *Id.* Plaintiff had adduced evidence that her employer treated her "as incapable and uneducable throughout the final months of her employment." *Id.* Twice, her immediate supervisor "asked her to quit, citing her age and her 'image.'" *Id.* Also, another supervisor had asked plaintiff to resign and threatened to fire her if she refused. *Id.* Her employer stripped her of "long-standing job responsibilities" and furnished her with inadequate information and training in her new role. *Id.*

Plaintiff's effort to make the summary judgment facts here parallel those in *Acrey* falls well shy of the mark. Unlike *Acrey*, no one asked plaintiff here to quit, and no one threatened to fire him. Plaintiff cites a coworker's affidavit, which stated that it "was common knowledge at Honeywell that when you were assigned to a special project you were on your way out the door." Doc. 50-6 at 3 (Gonzalez Decl. ¶ 6). This testimony isn't nearly enough for a factfinder to conclude that "a reasonable person in [plaintiff's] position would have felt compelled to resign." *Brown*, 13 F.4th at 1093 (quotation cleaned up). An abstract possibility—one based merely on "common knowledge"—that plaintiff might face termination in the future isn't sufficient to "show that [he] had no other choice but to quit." *Hiatt*, 858 F.3d at 1318 (quotation cleaned up); *see also Ellington v. Murray Energy*, No. 07CV766 DAK, 2010 WL 3855277, at *10 (D. Utah

Sept. 30, 2010) ("The law is clear that the mere threat of discipline or discharge is not enough to establish a constructive discharge, especially in the absence of any actual discipline.").  To say it another way, even if plaintiff "feared" his special-project assignment "set the stage for [his] firing, an apprehension of future termination is insufficient to establish constructive discharge." *Stratton v. Bentley Univ.*, 113 F.4th 25, 40 (1st Cir. 2024) (quotation cleaned up); *see also Saville v. Int'l Bus. Machines Corp.*, 188 F. App'x 667, 670 n.3 (10th Cir. 2006) (explaining that mere "speculation" of future termination "is insufficient to withstand summary judgment")

In short, plaintiff hasn't adduced facts capable of supporting a constructive-discharge claim.  No rational trier of fact could conclude otherwise.[7]

### d.      Performance Evaluations, Warnings, and Coaching

Finally, plaintiff argues that his performance evaluations and verbal warnings qualify as adverse employment actions.  Not so.  These performance evaluations and warnings—even if they theoretically hurt plaintiff's future promotion prospects—didn't alter the terms and conditions of plaintiff's employment.  So, even under the *Muldrow*'s more lenient standard, they don't qualify as adverse employment actions.

The weight of authority after *Muldrow* supports this conclusion.  A performance review must cause "some identifiable negative effect on the terms, conditions, or privileges of employment before it will be considered an adverse employment action for the purposes of an intentional discrimination claim."  *Wilson v. Noem*, No. 20-cv-100 (GMH), 2025 WL 1000666, at *25 (D.D.C. Apr. 3, 2025) (compiling cases); *see also Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112–13 (1st Cir. 2024) (applying *Muldrow* and explaining that a "mere admonition by a

---

[7]      Because no reasonable factfinder could find that defendant constructively discharged plaintiff, the court needn't reach defendant's alternative argument that plaintiff failed to exhaust this allegation for his Title VII constructive-discharge discrimination claim.  *See* Doc. 47 at 37.

supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of plaintiff's employment"); *Knispel v. Haaland*, No. 21-CV-03015-RAL, 2025 WL 306426, at *14 (D.S.D. Jan. 27, 2025) ("An unfavorable evaluation alone is not an adverse employment action but may be actionable where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." (quotation cleaned up)).

Here, plaintiff hasn't adduced evidence that his less-than-excellent performance reviews or the coaching he received "caused any adverse change in the terms, conditions, or privileges of his employment[.]" *Wilson*, 2025 WL 1000666, at *25.  So, these actions don't qualify as adverse employment conditions.

Having winnowed plaintiff's discrimination claims down to his assignment to the special project and defendant's failure to promote him, the court uses those effects to process the rest of the *McDonnell-Doulgas* framework.

### 2.    Pretext and Inference of Discrimination

Plaintiff has briefed the inference-of-discrimination and pretext steps together.  Circuit precedent permits this practice because a plaintiff may use the same evidence to prove his prima facie case and pretext.  *See Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1336 (10th Cir. 2025) (explaining that "the fact of pretext alone may allow the inference of discrimination" (quotation cleaned up)); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) ("[T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual." (quotation cleaned up)); *see also Jenny v. L3 Harris Techs., Inc.*, 144 F.4th 1194, 1202–03 (10th Cir. 2025) (Eid, J., concurring) (worrying, in critique of *McDonnell Douglas* framework, that district courts might adhere too rigidly to

16

three-part framework and *Reeves* while losing sight of ultimate issue:  that is, whether a jury, viewing facts in light most favorable to plaintiff, could infer discrimination).  To that end, the court takes up the inference-of-discrimination and pretext stages simultaneously.

"'Pretext can be inferred from evidence revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's explanation.'"  *Walkingstick Dixon*, 125 F.4th at 1337 (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1234 (10th Cir. 2015)).  "'The critical question regarding this aspect of the *McDonnell Douglas* rubric is whether a reasonable factfinder could rationally find the employer's rationale unworthy of credence[.]'"  *Id.* (quoting *Lounds*, 812 F.3d at 1234).  Circuit law doesn't box plaintiffs into pursuing "any particular means of demonstrating that a defendant's stated reasons are pretextual."  *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007) (quotation cleaned up).

The court starts with plaintiff's discrimination claims based on the special assignment and, after completing that analysis, then progresses to the claims based on defendant's failure to promote him.

### a.        Special-Project Assignment

Defendant's only explanation for the special-project assignment is that it actually was designed to give plaintiff more exposure.  Doc. 47 at 28.  While a rational trier of fact might agree with this characterization, an equally rational one could conclude that the assignment strictly was a demotion—one which stripped plaintiff of substantial supervisory responsibilities and confined him to a small subset of his existing duties.  Bolstering this conclusion, plaintiff's coworker attested that it was "common knowledge" that "when you were assigned to a special project that you were on your way out the door."  Doc. 50-6 at 3 (Gonzalez Decl. ¶ 6).  And if plaintiff sustained a demotion, defendant's explanation makes little sense.  Defendant hasn't

explained how removing plaintiff's authority would help plaintiff by giving him broader or deeper exposure. This explanation is particularly curious because defendant didn't assign plaintiff any new duties; instead, defendant strictly pared down plaintiff's job. So, how would this reassignment provide plaintiff more exposure than he already had received? Defendant never says. In short, viewed in the light most favorable to plaintiff, defendant's explanation is "so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006). The court thus concludes plaintiff has presented a sufficient case of pretext. This conclusion dooms defendant's motion.

### b.    Failure to Promote

Unlike the special-project assignment, defendant offered a fulsome explanation for its decision to promote Press instead of plaintiff. In particular, Klossen explained that he recommended Press because Press had more experience managing a large team, and because plaintiff struggled to answer questions, had experienced some leadership failures, and had struggled with revenue projection.

Plaintiff takes issue with the "revenue projection" component of this rationale. He explains that his revenue *generation* actually was superb, and so, defendant's proffered explanation is pretextual. The court isn't persuaded—for two reasons. *First*, defendant never accused plaintiff of having poor revenue *generation*; instead, Klossen cited plaintiff's revenue *projection* when he explained why he had recommended Press for promotion over plaintiff. Doc. 50-23 at 46 (Pl. Ex. 23). "Projection" and "generation" don't mean the same thing.[8] So

---

[8]    Perhaps plaintiff could contend that these terms constitute engineering terms of art with which the court lacks familiarity. But here's the problem: plaintiff hasn't made that argument. And he bears the burden on this pretext inquiry. *Swackhammer*, 493 F.3d at 1166. And so, it was his burden to come

plaintiff's assertion about his revenue-generation performance says little about the concerns that Klossen cited. *Second*, defendant proffered several other reasons for electing not to promote plaintiff. These included leadership failures, an inability to respond to questions, and less experience managing a large team than Press. Doc. 47-3 at 4–5 (Klossen Dep. 16:20–17:5); Doc. 50-23 at 46 (Pl. Ex. 23). So, even if a rational factfinder could question one aspect of defendant's explanation, plaintiff hasn't raised a triable issue that the whole of the explanation was pretextual.

Plaintiff also argues that he had similar experience to Press. Doc. 52-1 at 29. To plaintiff's credit, defendant doesn't controvert this assertion. *Compare* Doc. 52-1 at 6, *with* Doc. 69 at 8 (declining to controvert this assertion). The problem for plaintiff is that the court's inquiry is limited to whether defendant "honestly believed" the reasons it gave for hiring Press over plaintiff "and acted in good faith upon those beliefs." *Rivera v. City and County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004) (quotation cleaned up). That is, plaintiff can't evade summary judgment just because Klossen's belief about the candidates' relative experience was "erroneous." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998). Instead, plaintiff must present evidence that Klossen lacked a "good faith belief" in his proffered reasons. *Id.* And plaintiff hasn't adduced any evidence that Klossen's explanation was pretextual.

Klossen offered a plausible explanation for differentiating between plaintiff's experience and Press's—*viz.*, Press was managing a "much larger statement of work" and "had more experience managing a larger team" than plaintiff. Doc. 47-3 at 4–5 (Klossen Dep. 16:20–17:5). Fatally, plaintiff hasn't controverted that Press had more experience managing a larger team than plaintiff. *See above* n.1. Plaintiff thus has failed to raise a triable issue that defendant's

forward and explain the meaning of these terms and why they support his argument that defendant's explanation was pretextual. He didn't.

19

explanation for hiring Press over plaintiff was pretextual. *See Stover v. Martinez*, 382 F.3d 1064, 1077 (10th Cir. 2004) (explaining that plaintiff's "argument that she was more experienced" than the person defendant promoted failed to establish pretext in light of defendant's other legitimate explanations).

Finally, plaintiff argues that defendant's inadequate investigation into his complaints supports pretext for his claims. To be sure, an inadequate investigation can permit a jury to infer pretext. *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 542 (10th Cir. 2014). But not in the way plaintiff imagines. "A failure to conduct what appeared to be a fair investigation of the violation that purportedly prompted adverse action may support an inference of pretext." *Id.* (quotation cleaned up). That is, if an employer takes an adverse employment action against a plaintiff based on an inadequate investigation, then a jury properly can find pretext. That's not what happened here, however. Plaintiff doesn't cite any adverse employment actions that resulted from a purportedly inadequate investigation. What's more, it's not at all clear that defendant conducted an inadequate investigation. When deciding whether investigations show pretext, courts look for a "disturbing procedural irregularity." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007) (quotation cleaned up). Here, plaintiff complains that HR didn't speak to all his listed witnesses and inadequately interviewed other witnesses. Yet he fails to cite any authority requiring HR to do so. So, the court can't find any disturbing procedural irregularities in the investigation that might permit a factfinder to infer pretext.

### 3. Discrimination Conclusion

Just one of plaintiff's discrimination theories survives summary judgment: the one based on defendant assigning him to a special project and stripping him of key job responsibilities. His claims based on (i) constructive discharge and (ii) warnings and poor evaluations aren't viable because those actions aren't adverse employment actions under the governing legal standard.

20

And plaintiff's claim based on defendant promoting someone else instead of him can't withstand summary judgment because plaintiff hasn't shouldered his burden to raise a triable issue that defendant's race-neutral explanation is pretextual.  The court thus grants summary judgment against plaintiff's discrimination claims—except for the claims based on defendant changing plaintiff's job duties with the special-project assignment.

The court takes up plaintiff's hostile-work-environment claim, next.

### B.    Hostile Work Environment

As with the discrimination claims, the same standard governs hostile-work-environment claims under Title VII and § 1981.  *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1170 (10th Cir. 2018).  To succeed on these claims, plaintiff must establish the following:

> (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on race; and (4) due to the harassment's severity and pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.

*Id.* (quotation cleaned up).  Plaintiff's claims here falter on the final element.

Our Circuit has emphasized the "high bar" required to recover under a hostile-work-environment claim.  *Iweha v. Kansas*, 121 F.4th 1208, 1223 (10th Cir. 2024).  "'An employer creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Id.* at 1221 (quoting *Hall v. U.S. Dep't of Labor, Admin. Rev. Bd.*, 476 F.3d 847, 851 (10th Cir. 2007)).  When assessing severity and pervasiveness, the court looks "to the totality of the circumstances" and considers "such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance." *Throupe v. Univ. of Denv.*, 988 F.3d 1243, 1252 (10th Cir. 2021) (quotation cleaned up).[9]

To succeed on his claims, plaintiff "must prove that [his] work environment was both 'objectively and subjectively hostile.'" *Iweha*, 121 F.4th at 1221 (quoting *Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012)). Defendant doesn't dispute that plaintiff subjectively perceived his environment as hostile, so the court zeroes in on the objective prong.

Plaintiff argues that the following incidents generated a hostile work environment:

- Press micromanaged plaintiff; treated plaintiff differently from other workers; and criticized plaintiff, Doc. 52-1 at 36–37;
- Press made "things difficult for" plaintiff, *id.* at 36; and
- defendant "demeaned and disregarded" plaintiff's presence and leadership, *id.* at 38.

These simply won't do. Even when viewed collectively, the summary-judgment facts here fail the pervasive-or-severe test.

No doubt, a jury might consider some of these alleged interactions "troubling." *Iweha*, 121 F.4th at 1223. But they don't amount to the sort of "outrageous conduct" necessary to alter the terms and conditions of employment. *Id.* The incidents plaintiff alleges weren't pervasive. *See id.* ("[A] plaintiff ordinarily must show more than a few isolated incidents of enmity[.]" (quotation cleaned up)); *Throupe*, 988 F.3d at 1255 (explaining that pervasiveness requires a "steady barrage of discriminatory conduct" (quotation cleaned up)). Nor were they severe. *See Throupe*, 988 F.3d at 1255 ("We have found conduct sufficiently severe to overcome summary judgment in only particularly threatening or humiliating circumstances."); *Frank v. Heartland Rehab. Hosp., LLC*, No. 20-cv-2496-HLT-KGG, 2022 WL 486793, at *3 (D. Kan. Feb. 16,

---

[9]     Our Circuit recently has confirmed that *Muldrow*'s new some-harm standard doesn't apply to hostile-work-environment claims. *Russell v. Driscoll*, 157 F.4th 1348, 1352–53 (10th Cir. 2025).

22

2022) (explaining that conduct that isn't tortious, physically threatening or humiliating, and doesn't involve physical contact usually isn't severe), *aff'd*, 2023 WL 4444655 (10th Cir. July 11, 2023).  Plaintiff hasn't "identified any explicit discriminatory slurs—much less a quantity of them that would be deemed more than sporadic or isolated—nor has [he] pointed to anything approaching a barrage of critical or offensive comments." *Iweha*, 121 F.4th at 1223.[10]

A brief review of our Circuit's cases confirms that the summary-judgment facts here come up woefully short.  *E.g.*, *Brown v. LaFerry's LP Gas Co., Inc.*, 708 F. App'x 518, 522–23 (10th Cir. 2017) (affirming grant of motion to dismiss because "silent treatment" from coworkers and three racist comments by supervisor didn't "rise to the level necessary to state a hostile work environment claim under Title VII"); *Iweha*, 121 F.4th at 1223–25 (affirming summary judgment for employer because exclusion from projects, derogatory questions and comments about plaintiff's country of origin and hygiene, and disparaging comments about Martin Luther King, Jr. holiday weren't severe or pervasive); *Morris*, 666 F.3d at 665–69 (affirming summary judgment for employer because defendant doctor flicking plaintiff on the head, throwing bloody heart tissue, and yelling at plaintiff weren't severe or pervasive); *Throupe*, 988 F.3d at 1253–55 (evidence that defendant spread rumors about plaintiff, investigated him, issued a written

---

[10]     Plaintiff argues that the court must submit his hostile-work-environment claim to a jury because "'the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact.'"  Doc. 52-1 at 31 (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)).  Our Circuit's admonition might lead some to believe that summary judgment on a severity-or-pervasiveness analysis is almost never appropriate.  But the cases tell a different story.  Our Circuit often has affirmed summary judgment premised on insufficient severity or pervasiveness.  *E.g.*, *Iweha*, 121 F.4th at 1221–25; *Throupe*, 988 F.3d at 1253–55; *Morris*, 666 F.3d at 663–69.  Under Circuit precedent, granting summary judgment is appropriate when "the plaintiff fails to make" a severe-or-pervasive showing.  *Throupe*, 988 F.3d at 1252.  As these cases make clear, at bottom, summary judgment against a hostile-work-environment claim is no different than summary judgment against any other claim.  *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (explaining that there "is no discrimination case exception to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial" (quotation cleaned up)).

warning, yelled at plaintiff, and assigned him a less favorable schedule insufficient to survive summary judgment).

At bottom, plaintiff wholly has failed to adduce evidence that the allegedly hostile work environment altered "the terms or conditions of his employment." *Throupe*, 988 F.3d at 1255. No reasonable factfinder could conclude otherwise. The court thus grants summary judgment against plaintiff's Title VII and § 1981 claims for hostile work environment.

The court next turns to plaintiff's retaliation claims, his last two claims.

## C.    Title VII and § 1981 Retaliation

"Title VII's anti-retaliation provision (the opposition clause) bars an employer from discriminating against an individual who has 'opposed any practice made an unlawful employment practice' by the statute." *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021) (quoting 42 U.S.C. § 2000e-3(a)). Section 1981 also proscribes retaliation against protected activity. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008). The court again applies the *McDonnell-Douglas* framework to these retaliation claims. *Ford*, 45 F.4th at 1224. Again, the steps of this framework overlap.

To make out a prima facie case for a Title VII or § 1981 retaliation claim, plaintiff "must show . . . '(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)); *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) ("[T]he showing required to establish retaliation is identical under § 1981 and Title VII[.]" (quotation cleaned up)).

The first element is easy.  Plaintiff plainly engaged in protected activity when he filed an internal complaint alleging discrimination.  But some of plaintiff's claims wither at the second element, which requires plaintiff to demonstrate that he suffered a materially adverse employment action.  The court takes on this second element, below.

### 1.    Materially Adverse Employment Action

The test for a *materially* adverse employment action as applied to retaliation claims differs from the test for an adverse employment action applied to discrimination claims. *Muldrow*, 601 U.S. at 357–58.  "An employer action is materially adverse if 'it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 977 (10th Cir. 2025) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  "[P]etty slights, minor annoyances, and simple lack of good manners" don't qualify as materially adverse employment actions. *White*, 548 U.S. at 68.  After all, these are the sort of "ordinary tribulations" that "often take place at work and that all employees experience." *Id.* (quotation cleaned up); *see also Somoza*, 513 F.3d at 1212 ("The Court [in *White*] focused on the term 'materially adverse' in order to separate trivial harms from actionable injuries because Title VII does not establish a general civility code for the American workplace." (quotation cleaned up)).  The standard used to distinguish between materially adverse harms (actionable) and trivial ones (not actionable) is an objective one. *Somoza*, 513 F.3d at 1213.

Plaintiff merely directs the court to his briefing on the adverse-employment-action inquiry.  Doc. 52-1 at 40.  That's not helpful.  As the court already has explained, a different standard governs the inquiry for discrimination and retaliation claims.  Plaintiff cites three possible bases for a materially adverse employment action:  constructive discharge, unfair

discipline, and the special assignment.  As the court explains below, only the final one of these—

the reassignment—could qualify as a materially adverse employment action.[11]

### a.    Constructive Discharge

As the court already has explained, no reasonable factfinder could conclude that plaintiff

suffered constructive discharge, so that theory is out from the start.[12]

### b.    Evaluations and Coaching

Next, plaintiff's satisfactory, but less-than-excellent, performance review and informal

coaching also don't qualify as materially adverse employment actions.  Plaintiff hasn't explained

why these actions would dissuade a reasonable worker from filing a charge of discrimination.

"The Tenth Circuit has held that a negative performance evaluation *can* amount to an adverse

employment action in certain circumstances."  *Kincaid v. Unified Sch. Dist. No. 500*, 572 F.

Supp. 3d 1081, 1098 (D. Kan. 2021) (emphasis in original).  "But typically, this occurs only

when the negative performance evaluation later leads to a materially adverse employment action

such as termination or a failure to promote."  *Id.*; *see also Rios*, 106 F.4th at 120 (explaining that

a letter of reprimand—standing alone—wasn't a materially adverse employment action because

plaintiff "suffered no employment consequences as a result of the reprimand letter").  Here,

plaintiff hasn't proffered any evidence that he suffered a materially adverse action based on his

---

[11]    Plaintiff also makes a passing reference to defendant's failure to promote him.  *See* Doc. 52-1 at 41.  But defendant declined to promote Press more than a month before plaintiff filed an internal complaint.  So, defendant's promotion decision couldn't constitute retaliation for plaintiff's complaint.

[12]    The standard for an adverse employment action (for a Title VII discrimination claim) isn't the same as the standard for a materially adverse employment action (for a Title VII retaliation claim).  *Muldrow*, 601 U.S. at 357–58.  But the standard to establish constructive discharge is the same no matter whether it's used to support an adverse employment action or a materially adverse employment action.  *See Mitchell v. Zia Park, LLC*, 842 F. Supp. 2d 1316, 1329 (D.N.M. 2012) (applying the "objectively intolerable" standard for a Title VII retaliation claim premised on constructive discharge).  So the court's conclusion—discussed above with respect to the discrimination claims—controls here.

less-than-excellent performance review or the coaching he received.  These events thus don't

qualify as materially adverse employment actions.

### c.      Special Assignment

Finally, plaintiff cites his special assignment as a materially adverse employment action.

The court agrees with plaintiff; this assignment could dissuade a reasonable worker from

complaining of discrimination.  As the court already has explained, a jury reasonably could

conclude that defendant demoted plaintiff when it stripped him of many of his job duties.  Plus,

plaintiff's coworker attested that defendant assigned employees to special projects as a precursor

to terminating them.  *See* Doc. 50-6 at 3 (Gonzalez Decl. ¶ 6).  A factfinder thus could assess this

job reassignment as "a significant change" to plaintiff's "employment status[.]"  *Brown*, 13 F.4th

at 1090.  And a jury could conclude that this demotion would dissuade a reasonable employee

from filing a charge of discrimination.  *Cf. Payan v. United Parcel Serv.*, 905 F.3d 1162, 1174

(10th Cir. 2018) (finding no materially adverse employment action where defendant transferred

plaintiff "to a position with the *same* level of management authority" (emphasis added)).  To

summarize, plaintiff has adduced sufficient evidence for a jury to conclude that he suffered a

materially adverse employment action when defendant assigned him to a special project.[13]

### 2.      Pretext

The court's analysis of the rest of the *McDonnell-Douglas* framework for plaintiff's

discrimination claims applies equally to his retaliation claims.  *See Walkingstick Dixon*, 125

---

[13]      In a concluding sentence, plaintiff also lists "the harassing environment" as a materially adverse
employment action.  This perfunctory argument is waived because plaintiff inadequately briefed it.  *See
United States v. Moya*, 5 F.4th 1168, 1192 (10th Cir. 2021) (explaining that litigants waive arguments
"when they are inadequately presented" (quotation cleaned up)).  Even if it weren't, plaintiff hasn't raised
a triable issue that the environment was so hostile that it would dissuade a reasonable worker from
making a charge of discrimination.

F.4th at 1340 (applying pretext analysis for discrimination claim to retaliation claim). As with plaintiff's discrimination claim, a rational factfinder could reject as incoherent defendant's explanation that it removed plaintiff's job responsibilities to give plaintiff "additional and broader experience and greater exposure[.]" Doc. 47 at 31. This explanation seems even more incoherent given the coworker's attestation that a special-project assignment was bad news for one's future employment with defendant. Plaintiff's retaliation claim based on defendant assigning him to a special project thus survives summary judgment.

## IV.    Conclusion

Plaintiff's discrimination and retaliation claims under Title VII and Section 1981 survive to the extent that they're based on defendant changing the nature of plaintiff's job duties. The court thus denies defendant's motion for summary judgment against these claims. In all other respects, the court grants defendant's Motion for Summary Judgment (Doc. 46).[14]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Honeywell International Inc.'s Motion for Summary Judgment (Doc. 46) is granted in part and denied in part, as set out in full in this Order.

**IT IS SO ORDERED.**

**Dated this 11th day of March, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

[14]    Following some struggles with the court's local rules, *see* Doc. 58, a series of sealing motions remain pending in this case. Doc. 56; Doc. 59; Doc. 60; Doc. 64; Doc. 68. The court will decide these motions in a future order.